IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

REGINALD A. BENION, #127893,      )
                                  )
        Petitioner,               )
                                  )
v.                                )        CASE NO. 2:10-CV-785-MHT
                                  )              [WO]
                                  )
ROBERT NIELSEN, et al.,           )
                                  )
        Respondents.              )

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

## I.  INTRODUCTION AND PROCEDURAL HISTORY

This civil action is before the court on a 28 U.S.C. § 2254 petition for writ of habeas

corpus filed by Reginald A. Benion ["Benion"], a state inmate, on September 13, 2010.

In this petition, Benion challenges the revocation of his parole on September 14, 2009.[1]

In October of 1997, the Circuit Court of Jefferson County, Alabama convicted

Benion of unlawful distribution of a controlled substance and sentenced him to thirty-two

years imprisonment.  The Alabama Board of Pardons and Paroles granted parole to Benion

in May of 2005, and Benion remained under the conditions of this term of parole until

November 26, 2030.  *Respondents' Exhibit 1 - Doc. No. 8-11* at 38-39.[2] Benion agreed to

---

[1] The revocation occurred due to new criminal charges against Benion, unlawful possession of marijuana, on June 17, 2009.

[2] All exhibits and accompanying page numbers referenced herein are those assigned by this court in the docketing process.

various conditions of parole, including a condition requiring that he "not violate any law" while on parole.  *Id*. at 39.  Thus, it is a violation of any law by Benion, rather than his conviction of an offense, which would constitute a violation of the terms of his parole.  Benion likewise acknowledged that a "violation of any of these conditions may result in revocation of parole." *Id*.

On June 17, 2009, officers of the Birmingham Police Department charged Benion with unlawful possession of marijuana arising from a search of his car during which the officers observed and seized a marijuana cigar.  On June 24, 2009, LaGretchen Sullivan, Benion's parole officer, prepared a Report of Parole Violation in which she outlined three charges alleging violations of Benion's conditions of parole.  *Respondents' Exhibit 1 - Doc. No. 8-11* at 40-42.  In Charge No. 1, Sullivan identified the first degree possession of marijuana charge lodged against Benion and set forth the details of this offense as follows:

> According to the Arrest Report provided by Officers K. Karmondi and L. Louis with the Birmingham Police Department, on 06/17/09 at approximately 2120 (military time), Officers Karmondi and Louis were working the city zero tolerance operation for crime when they observed Reginald Benion driving onto a curb squealing his tires.  Officers Karmondi and Louis conducted a traffic stop when they observed a marijuana cigar on the back seat of the vehicle.  Benion was arrested for Unlawful Possession of Marijuana 1st and transported to the Birmingham City Jail without incident.  No further information is available at this time.

*Respondents' Exhibit 1 - Doc. No. 8-11* at 41.  The two remaining charges referenced in

the report detailed a new offense for unauthorized use of a motor vehicle and also alleged Benion failed to pay supervision fees. *Id*. at 41-42. On July 6, 2009, the parole board declared Benion delinquent. *Id*. at 43. A parole violation warrant subsequently was issued for Benion's arrest and he was arrested pursuant to this warrant on August 17, 2009.

On August 19, 2009, Sullivan served Benion a Notice of Parole Court Hearing which stated "[a] REPORT OF PAROLE VIOLATION has been prepared dated 6/24/09 alleging that the parolee [Reginald Benion] ... has violated parole. ***I have this date provided the parolee with a copy of that report*** and I have advised the parolee that a PAROLE COURT HEARING will be held to determine if there has been a violation of parole and to receive any evidence or argument that the parolee wishes to offer. I have advised the parolee that (s)he may have his/her witnesses testify at the hearing, may present their written statements, or may present any documents or evidence, may be represented by an attorney, may confront and cross-examine witnesses testifying against the parolee (unless the hearing officer finds good cause for not allowing confrontation), and that the parolee will receive a copy of the hearing officer's report." *Respondents' Exhibit 1 - Doc. No. 8-11* at 16 (Notice of Parole Court Hearing) (emphasis added). Benion acknowledged that he "received a copy of the REPORT OF PAROLE VIOLATION and this NOTICE which [he] read or which has been read to [him]." *Id*. Benion also waived the five-day notice for the revocation hearing, and the parole officer therefore scheduled the hearing for

the following day.  *Id*.  Upon receipt of this notice, Benion admitted guilt of the charge

regarding his failure to pay supervision fees and advised he "plan[ned] to plead guilty to

the same at [the] parole court hearing."  *Id*.

On August 20, 2009, a parole court hearing was conducted by John Anthony.

Anthony observed that Benion appeared competent, noted that Benion had not requested

any witnesses and advised Benion of his rights.  *Respondents' Exhibit 1 - Doc. No. 8-11*

at 45.  Both Benion and Sullivan "were heard as witnesses after answering affirmatively

to:  Do you swear or affirm that you will tell the truth in this hearing?"  *Id*. at 46.  During

this hearing, Sullivan testified regarding the details of the marijuana charge as outlined in

the "the report of parole violation."  *Id*.  Sullivan conceded "that all of the details were

obtained from a police report."  *Id*.  Benion then stated, in relevant part, "that when this

happened, he was not in the car ... [but] was in his front door....  [T]the police came and

questioned him then stated that they found marijuana in his car....  Reginald Benion stated

that the car [in which the officers found marijuana] did belong to him.  He stated that he

saw the police go to his car ... [and] that when the police went to his car, the police then

came back with marijuana."  *Id*.  Based on the testimony of the witnesses, the hearing

officer determined that Benion had violated the condition of his parole requiring that he

not violate any law.[3]  *Id*. at 50 ("This hearing officer finds sufficient evidence to support

---

[3]Under Alabama law, possession of marijuana, regardless of the degree of the charge, is a criminal offense.

the [possession of marijuana] charge.  This was based on the testimony of the parolee who testified that the police did find marijuana in the vehicle that belonged to him.  The parolee stated that he did observe the police go to his vehicle prior to them coming to him and showing him the marijuana that was found.").

During the revocation hearing, officer Anthony also heard testimony regarding the other two charges alleging parole violations by Benion.  With respect to the charge of failure to pay supervision fees, Benion withdrew his prior assertion of the intent to plead guilty and "stated that he is not guilty of the charge." *Respondents' Exhibit 1 - Doc. No. 8-11* at 49.  Benion testified that he worked only sporadically and therefore "had no money to pay" the requisite supervision fees.  *Id*.  "The parole officer did not provide any information as to the parolee having the ability to pay his ... month[ly] supervision fees." *Id*.  Consequently, Anthony deemed the evidence insufficient to support this charge.  *Id*. In addition, Anthony found the evidence insufficient to support the charge alleging unauthorized use of a vehicle.  *Id*. at 48.  After consideration of all the findings, Anthony "recommended that Reginald Benion's parole be revoked..." *Id*. at 50.  Benion received a copy of the hearing officer's report and recommendation.  *Id*. at 50-51.

On September 14, 2009, the Alabama Board of Pardons and Paroles reviewed the report and recommendation submitted by the hearing officer.  The Board, "after considering the evidence offered at Parole Court and the findings and recommendations

of the Hearing Officer ... **ORDER[ED]** ... [t]hat parole be revoked...” *Id*. at 52.

In November of 2009, Benion filed a petition for writ of certiorari with the Circuit Court of Montgomery County, Alabama challenging the parole board's decision to revoke parole. In this petition, Benion asserted that during the parole revocation proceedings he was denied the due process protections required by *Morrissey v. Brewer*, 408 U.S. 471 (1972). Specifically, Benion raised the following claims for relief:

1. He did not receive notice of the charges against him.

2. He was never advised of the evidence against him.

3. Although afforded the opportunity to be heard in person and present witnesses, whereupon he gave a statement at the hearing but declined to call witnesses, he was not allowed to confront the police officers who arrested him for possession of marijuana nor was he provided a copy of the police report.

4. The hearing officer was not neutral and detached as he distorted the testimony of the petitioner when preparing the parole hearing report. Benion maintains that in an effort to explain the facts relevant to the charge, he explained to the hearing officer that there was a "Zero Tolerance" area in Birmingham, Alabama and on this particular afternoon several police officers were canvassing his neighborhood. Police officers approached him outside his residence, questioned him, placed him in handcuffs and located what the officers identified as marijuana

6

in his car.

5.     Despite receiving a statement of the evidence,
there was no evidence against him.

*Respondents' Exhibit 1 - Court Doc. No. 8-11* at 7.

On January 20, 2010, the Circuit Court of Montgomery County denied Benion's

petition for writ of certiorari.  In its order, the court held that:

> The evidence demonstrates that Petitioner was charged with being
> delinquent, was given [advance written] notice of a revocation hearing, and
> was given a copy of the delinquency charges.  At the hearing, the hearing
> officer found insufficient evidence on two of the three charges (despite
> Petitioner's effort to plead guilty to one of those charges, failure to pay
> supervision fees).  The hearing officer did determine that sufficient evidence
> existed to sustain the charge that Petitioner was in possession of marijuana.
> From a review of the record, it is apparent that substantial evidence
> was presented, ironically much of it by the Petitioner, to support the decision
> of the Respondent.  Petitioner received adequate due process and the
> [respondent's] motion for summary judgment is granted.

*Respondents' Exhibit 1 - Court Doc. No. 8-11* at 68.

Benion filed a direct appeal of the trial court's order in which he alleged a denial of

due process in violation of *Morrissey*.  In support of this challenge, Benion argued that:

(1) He did not receive written notice of the charges against him; (2) He was not disclosed

the evidence against him; (3) He was not afforded the opportunity to be heard in person,

present witnesses or submit documentary evidence; (4) He was not allowed to

confront/cross examine the actual witnesses to his alleged possession of marijuana, i.e., the

police officers who arrested him; (5) He was not afforded a neutral and detached hearing

7

body; and (6) He received only one revocation hearing, identified by the petitioner as a preliminary hearing, and was not afforded a second or final hearing. *Respondents' Exhibit 9 - Doc. No. 8-10* at 3. On June 18, 2010, the Alabama Court of Criminal Appeals affirmed the denial of Benion's petition for writ of certiorari. *Respondents' Exhibit 2 - Court Doc. No. 8-1* at 1-6. The appellate court's opinion reads, in relevant part, as follows:

> In his petition [for writ of certiorari] in which he challenged the revocation of his parole, Benion argued that he did not receive the minimum due process requirements before his parole was revoked. The basis for the revocation of Benion's parole was that he was found to be in possession of marijuana. Benion's contention that he was denied due process appears to be grounded in the belief that he was entitled to two hearings -- a preliminary hearing before a hearing officer and a final hearing before the Alabama Board of Pardons and Paroles ("the Board") -- prior to his revocation. Benion further argues that the evidence was insufficient to support his revocation, particularly since the basis for revocation no longer exists because, he says, the criminal charge [for possession of marijuana] was dismissed.
>
> "A petition for a writ of certiorari filed in the circuit court is the proper method to challenge a ruling of the Alabama Board of Pardons and Paroles. *Samuels v. Alabama Board of Pardons & Paroles,* 687 So.2d 1287 (Ala.Cr.App.1996); *Ellard v. State,* 474 So.2d 743 (Ala.Cr.App.1984), aff'd, 474 So.2d 758 (Ala.1985). Judicial review of administrative acts and decisions is limited in scope; ordinarily the courts will pass only on the questions whether the administrative agency has acted within its constitutional or statutory powers, whether its order or determination is supported by substantial evidence, and whether its action is reasonable and not arbitrary. *Ellard; Little Caesar's, Inc. v. Alabama Alcoholic Beverage Control Bd.,* 386 So.2d 224 (Ala.Civ.App.1979); 73 C.J.S. *Public Administrative Law and Procedure,* § 202, et seq. (1951).
>
> The minimum due process requirements that must be met in revoking probation or parole are (1) written notice of

the claimed violations of probation or parole, (2) disclosure to the probationer or parolee of the evidence against him or her, (3) an opportunity to be heard in person and to present witnesses and documentary evidence, (4) the right to confront and to cross-examine adverse witnesses [present at the hearing], unless the hearing officer specifically finds good cause for not allowing confrontation, (5) a neutral and detached hearing body, and (6) a written statement by the factfinders as to the evidence relied on and the reasons for revoking probation and parole. *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972); *Gagnon v. Scarpelli,* 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973); *Armstrong v. State,* 294 Ala. 100, 312 So.2d 620 (1975); *Udoakang v. State,* 678 So.2d 306 (Ala.Cr.App.1996); *Grimes v. State,* 579 So.2d 693 (Ala.Cr.App.1991).

*Johnson v. State*, 729 So.2d 897, 898-899 (Ala.Crim.App. 1998).

Benion's claim that he received only one hearing instead of two hearings prior to his revocation and that the denial of the two hearings violated the procedural requirements set forth in *Morrissey* is without merit. The 1999 amendment to § 15-22-32, Ala. Code 1975, abolished the two-hearing system and instituted a one-hearing system. Parolees no longer have the right to appear before the Board. Benion was entitled to the due process requirements for only one hearing before a hearing officer, which is what he received. The record shows that Benion was afforded due process in the revocation of his parole. The requirements set forth in *Morrissey* were clearly met. Benion was given notice of the alleged violation[s] and of the evidence against him; he was given notice of the hearing; he was given an opportunity to present his own witnesses and to confront and cross-examine witnesses who were present; the hearing was heard before a neutral and detached body; and he was given a written statement by the finder-of-fact that explained the evidence relied on and the basis for the revocation.

Further, the evidence was sufficient that Benion had violated a condition of his parole. The hearing officer entered a finding that Benion admitted at the hearing that a police officer had found a marijuana cigar in Benion's vehicle. Even if Benion's claim is true -- that the criminal charge had been dismissed -- that fact does not bar revocation of his parole [based on the conduct underlying the charge]. *See Crowe v. State*, 671 So.2d 112, 113 (Ala.Crim.App. 1993) ("Acquittal in criminal proceedings does not

9

preclude revocation of parole on the same charge in light of the fact that the quantum of evidence to justify revocation of a sentence of probation is less than that necessary to establish guilt of a defendant beyond a reasonable doubt."); *Carlton v. State*, 507 So.2d 998 (Ala.Crim.App. 1986) (stating that probation may be revoked on a probationer's bad acts even though a criminal charge or conviction based on the acts is subsequently dismissed, reversed, vacated or nol-prossed).

Because Benion's petition did not state a claim on which relief could be granted, the circuit court's dismissal of his petition was proper. Accordingly, the judgment of the circuit court is affirmed.

*Respondents' Exhibit 2 - Court Doc. No. 8-1 at 1-6.*

Benion filed an application for rehearing which the Alabama Court of Criminal Appeals overruled on July 16, 2010. *Respondents' Exhibit 4 - Doc. No. 8-3.* Benion then filed a petition for writ of certiorari with the Alabama Supreme Court. *Respondents' Exhibit 5 - Court Doc. No. 8-4.* The Alabama Supreme Court denied the petition for writ of certiorari on September 10, 2010, *Respondents' Exhibit 6 - Court Doc. No. 8-5* at 1, and issued its certificate of judgment on this same date. *Id.* The Alabama Court of Criminal Appeals likewise entered a certificate judgment indicating finality of judgment on September 10, 2010. *Respondents' Exhibit 7 - Court Doc. No. 8-6.*

Benion initiated this 28 U.S.C. § 2254 action on September 13, 2010. In this petition, Benion asserts the following claims for relief:

1. The petitioner was denied due process during the parole revocation hearing because he was not allowed to confront and cross examine the police officers who arrested him for possession of marijuana.

10

2.      The petitioner was denied due process in the parole revocation proceedings as he did not receive notice of the alleged violations.

3.      The petitioner was denied due process in his parole revocation because the reason for revocation "does not exist and did not [exist] at the time of revocation ... [as the charge] for possession of marijuana ... was nollee processed."

4.      The petitioner was denied due process in the parole revocation because the only evidence presented by his parole officer was hearsay evidence.

5.      The petitioner was denied due process in his parole revocation in that he had only one hearing, a preliminary haring, during the parole revocation proceedings.

*Petition for Writ of Habeas Corpus - Doc. No. 1* at 2.

In their answer to the petition, the respondents argue that Benion is entitled to no relief from this court as the state courts properly adjudicated each of his claims on the merits. *Price v. Vincent*, 538 U.S. 634, 638, 123 S.Ct. 1848, 1852 (2003) ("A habeas petitioner whose claim was adjudicated on the merits in state court is not entitled to relief in federal court unless he meets the requirements of 28 U.S.C. § 2254(d)."); *Williams v. Taylor*,529 U.S. 362, 402, 120 S.Ct. 1495, 1518 (2000).

Upon review of the § 2254 petition, the answer of the respondents, Benion's responses to the answer, the state court record, orders/opinions issued by the state courts

11

and applicable federal law, this court finds that no evidentiary hearing is required, Rule

8(a), RULES GOVERNING SECTION 2254 CASES IN UNITED STATES DISTRICT COURTS, and

concludes the petition is due to be denied.

## II.  DISCUSSION OF APPLICABLE LAW

The instant petition for federal habeas relief is governed by 28 U.S.C. § 2254, as

amended by the Anti-Terrorism and Effective Death Penalty Act ["AEDPA"].  *Lindh v.*

*Murphy,* 521 U.S. 320, 326 (1997) (federal habeas petitions filed after the effective date of

the AEDPA are subject to the Act's provisions). "A habeas petitioner whose claim was

adjudicated on the merits in state court is not entitled to relief in federal court unless he

meets the requirements of 28 U.S.C. § 2254(d)." *Price*, 538 U.S. 634, 638, 123 S.Ct. 1848,

1852; *Williams*, 529 U.S. 362, 402, 120 S.Ct. 1495, 1518.  Under the requisite provisions

of 28 U.S.C. § 2254(d), with respect to a claim adjudicated on the merits in state court,

federal habeas relief from a state court judgment may not be granted unless the

adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in
> the State court proceeding.

In *Williams*, the Supreme Court held:

> Under the "contrary to" clause a federal court may grant the

writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

529 U.S. at 412-413, 120 S.Ct. at 1523.

The Supreme Court subsequently explained habeas relief is appropriate when a petitioner demonstrates "that a decision by a state court is 'contrary to' ... clearly established [Supreme Court] law if it 'applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.' *Williams v. Taylor*, 529 U.S. 362, 405-406, 120 S.Ct. 1495, 146 L.Ed. 2d 389 (2000)." *Price*, 538 U.S. at 640, 123 S.Ct. at 1853. Additionally, federal review in a habeas action "is limited to whether the state court's decision was objectively unreasonable in the light of clearly established federal law. *Williams*, [529 U.S. at 409],120 S.Ct. at 1521." *Hawkins v. Alabama*, 318 F.3d 1302, 1310 (11th Cir. 2003); *Parker v. Head*, 244 F.3d 831, 835 (11th Cir. 2001), citing *Williams*, *supra* ("[F]ederal habeas relief [is] available under the 'unreasonable application' standard only if the state court's application of clearly established federal law was 'objectively unreasonable.'").  Thus, a federal court is not to decide "the correctness *per se* ... of the

13

state court decision" but only the "objective reasonableness" of such decision.  *Brown v. Head*, 272 F.3d 1308, 1313 (11th Cir. 2001).  Moreover, "an **unreasonable** application of federal law is different from an **incorrect** application of federal law."  *Williams*, 529 U.S. at 410, 120 S.Ct. at 1522 (emphasis in original).  "Under § 2254(d)(1)'s 'unreasonable application' clause, ... a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  529 U.S. at 411, 120 S.Ct. at 1522.

Federal district courts are likewise directed to determine whether the state court based its findings on "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  A state court's determinations of fact shall be "presumed to be correct," and the habeas petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).  However, even when the state court addresses a question of law, this court is not authorized "to evaluate [a petitioner's] claim *de novo* rather than through the lens of § 2254(d)."  *Price*, 538 U.S. at 639, 123 S.Ct. at 1852.  The Supreme Court admonishes that such *de novo* evaluation "exceeds the limits imposed on federal habeas review by 28 U.S.C. § 2254(d)...."  538 U.S. at 636, 123 S.Ct. at 1851.  As is clear from the foregoing, a federal "district court's review ... [of claims decided by the

14

state courts] is greatly circumscribed and highly deferential to the state courts." *Crawford v. Head*, 311 F.3d 1288, 1295 (11th Cir. 2007). The AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 694 (2002).

The law is clear that although a parolee is entitled to the protection of procedural due process at a parole revocation hearing, *see Overton v. Bazzetta,* 539 U.S. 126, 138 (2003), "the full panoply of rights due a defendant in [a criminal prosecution] does not apply to parole revocations." *Morrissey,* 408 U.S. at 480. In order to revoke parole, there must be "(1) a formal finding that a ... parolee has committed a violation and (2) a determination that the violation was serious enough to warrant reimposing the . . . parolee's original sentence." *United States v. Ramirez,* 347 F.3d 792, 800 (9th Cir.2003) (citations omitted). Due process requires that "the final revocation of probation must be preceded by a hearing, although the factfinding body need not be composed of judges or lawyers." *Black v. Romano,* 471 U.S. 606, 611-612 (1985) (citations omitted); *Morrissey*, 408 U.S. at 486 (hearing officer not required to be a judicial officer).

In *Morrissey*, a case in which parole revocation occurred absent a hearing, the Supreme Court determined that individuals threatened with the revocation of parole possess a liberty interest which entitles them to minimal due process protections. The

15

Court, however, cautioned that it did not intend to lay down a rigid structure for parole revocation procedures: "[D]ue process is flexible and calls for such procedural protections as the particular situation demands.... [N]ot all situations calling for procedural safeguards call for the same kind of procedure." 408 U.S. at 481. *Morrissey* is primarily concerned with ensuring that a purported parole violator receives a fair proceeding consistent with the Due Process Clause prior to the revocation of parole.

In addressing the "nature of the process that is due" a parolee, the Court identified two stages relevant to parole revocation - the preliminary hearing and the revocation hearing. *Id*. at 485-486. "The first stage occurs when the parolee is arrested and detained, usually at the direction of his parole officer. The second occurs when parole is formally revoked." *Id*. at 486. The Court explained that the initial "inquiry should be seen as in the nature of a 'preliminary hearing' to determine whether there is probable cause or reasonable ground to believe that the arrested parolee has committed acts that would constitute a violation of parole conditions." *Id*. In describing the preliminary hearing, the Court advised "the parolee should be given notice that the hearing will take place and that its purpose is to determine whether there is probable cause to believe he has committed a parole violation. The notice should state what parole violations have been alleged. At the hearing the parolee may appear and speak in his own behalf; he may bring letters, documents, or individuals who can give relevant information to the hearing officer. On

16

request of the parolee, [a] person who has given adverse information on which parole revocation is to be based is to be made available for questioning in his presence.  However, if the hearing officer determines that an informant would be subjected to risk of harm if his identity were disclosed, he need not be subjected to confrontation and cross-examination." *Id*. at 486-487.  The Court added "the determination that reasonable ground exists for revocation of parole should be made by someone not directly involved in the case.." *Id*. at 485.  The Court assigned importance to a prompt preliminary hearing because "[t]here is typically a substantial time lag between the arrest and the eventual determination by the parole board whether parole should be revoked.  Additionally, it may be that the parolee is arrested at a place distant from the state institution, to which he may be returned before the final decision is made concerning revocation.  Given these factors, due process ***would seem to require*** that some minimal inquiry be conducted at or reasonably near the place of the alleged parole violation or arrest and as promptly as convenient after arrest while information is fresh and sources are available."  *Id*. at 485 (emphasis added).

The second stage is a final revocation hearing and "[t]his hearing must be the basis for more than determining probable cause; it must lead to a final evaluation of any contested relevant facts and consideration of whether the facts as determined warrant revocation....   The revocation hearing must be tendered within a reasonable time after the parolee is taken into custody [on the parole violation].  A lapse of two months ... would not

appear to be unreasonable." 408 U.S. at 488.

After explaining the stages, the Court set forth the minimal due process requirements necessary for revocation of parole. These requirements "include (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole." *Id*. at 489. The Court admonished that it could not "write a code of procedure; that is the responsibility of each State." *Id*. at 488.[4]

The holding in *Morrissey* did not address two significant issues: (1) The actual period of time a parolee may be held on a parole violation prior to a probable cause determination; and (2) The permissibility of combining the preliminary and final hearings into a "unitary" proceeding where the full panoply of due process rights required by *Morrissey* is provided to the parolee. Although the Court stated that a preliminary determination of probable cause should occur promptly upon a parolee's detention for an

---

[4] In *Gagnon v. Scarpelli*, 411 U.S. 778 (1973), the Court extended *Morrissey* to cases involving probation revocation and encouraged states to devise "creative solutions" to deal with the practical difficulties of complying with the requirements of *Morrissey*. 411 U.S. at 782, n.5

alleged parole violation followed by a revocation hearing within a reasonable time after such detention, nothing in *Morrissey* expressly prohibits a state from combining the preliminary and final hearings into one, prompt comprehensive hearing, during which all requisite rights are provided to the parolee.  Consequently, several federal and state courts, including this court and the Alabama Court of Criminal Appeals in its decision on this matter, have determined that *Morrissey* does not mandate two hearings and allows consolidation of the preliminary and final revocation hearings into a single proceeding so long as the matter of revocation is heard in a full hearing after either of the following two events:  (a) the parolee's detention for a parole violation, or (b) a neutral tribunal has found probable cause that the parolee has violated a condition of parole.  In the first instance, the hearing must be heard promptly after the parolee is confined on the parole violation charge, whereas the second circumstance requires that the hearing be conducted within a reasonable period of time after the parolee's detention on the parole violation.  *Pierre v. Washington State Bd. of Prison Terms and Paroles*, 699 F.2d 471, 473 (9th Cir. 1983) (preliminary hearing not required where a final hearing is promptly held after parolee's detention for a violation of parole); *Ellis v. District of Columbia*, 84 F.3d 1413, 1423-1424 (D.C. Cir. 1996) (preliminary hearing unnecessary when a formal revocation hearing is held within thirty days of execution of parole violation warrant); *Carter v. Mosley*, 2:03-CV-776-MEF-VPM (M.D. Ala. 2003) (full hearing under Alabama statute held within

19

eleven days of parolee's arrest for parole violations "satisfied the due process requirements of *Morrissey*."); *State v. Myers*, 545 P.2d 538, 544 (Wash. 1976) (en banc) (provision of unitary revocation hearing within thirty days of issuance of arrest warrant constitutional); *State v. Vashey*, 823 A.2d 1151, 1155 (R.I. 2003) (combined preliminary/final hearing at which alleged violator receives all rights mandated by *Morrissey* is sufficient "because no constitutional purpose would be served by bifurcating" the State's unitary violation hearing at which "alleged violator is afforded due process rights equal or superior to those afforded in a [*Morrissey*] final hearing. Neither the federal nor our own constitution requires empty ceremonies."); *Sneed v. Donahue*, 993 F.3d 1239, 1241 (6th Cir. 1993) (preliminary hearing not required when parolee was incarcerated for a crime committed while on parole, because the incarceration supported a finding of probable cause that a parole violation had occurred); *Doyle v. Elsea*, 658 F.2d 512, 516 (7th Cir. 1981) (parolee's right to a preliminary hearing is vitiated where the parolee has been arrested for a crime committed while on parole, even though not convicted); *see also Moody v. Daggett*, 429 U.S. 78, 86 n.7 (1976) (parolee's convictions on new charges obviated the need for a preliminary probable cause hearing and parolee not entitled to final revocation hearing until taken into custody as a parole violator); *Heinz v. McNutt*, 582 F.2d 1190 (9th Cir. 1978) (preliminary hearing not necessary where parolee convicted of a new crime but parole could not be revoked absent final hearing); *Mack v. McCune*, 551 F.2d 251, 253 (10th Cir. 1977) ("Once

20

a parolee has been convicted of an offense [committed while on parole], the requisite probable cause for parole revocation has been established and an initial [preliminary] hearing is not required.").

### III.  ANALYSIS OF CLAIMS

On June 24, 2009, Benion's parole officer prepared a Report of Parole Violation detailing various charges of parole violations allegedly committed by Benion. *Respondents' Exhibit 1 - Doc. No. 8-11* at 40-42.  Based on this report, the Alabama Board of Pardons and Paroles declared Benion delinquent on July 6, 2009.  *Id*. at 43.

The evidentiary materials filed by the parties establish that on August 19, 2009 Benion was served with Notice of Parole Court Hearing and a copy of the June 24, 2009 Report of Parole Violation prepared by his parole officer.  *Petitioner's Exhibit C to the Petition for Writ of Certiorari/Respondents' Exhibit 1 - Doc. No. 8-11* at 16 ("A REPORT OF PAROLE VIOLATION has been prepared on 6/24/2009 alleging that the parolee [Reginald Benion] ... has violated parole.  I have this date provided the parolee with a copy of that report and I have advised the parolee that a PAROLE COURT HEARING will be held to determine if there has been a violation of parole and to receive any evidence or argument that the parolee wishes to offer.").  This notice also advised Benion that "he may have his/her witnesses testify at the hearing, may present their written statements, or may present any documents or evidence, may be represented by an attorney, may confront and

21

cross-examine witnesses testifying against the parolee (unless the hearing officer finds good cause for not allowing confrontation), and that the parolee will receive a copy of the hearing officer's report." *Id*. Benion indicated on the form that he did not seek any witnesses nor did he request representation by an attorney. *Id*. Benion signed this notice acknowledging that he had "receive[d] a copy of the REPORT OF PAROLE VIOLATION and this NOTICE" which he either read or had read to him. *Id*. Additionally, in his November 2, 2010 response, Benion concedes that "[o]n August 19th 2009 [his] parole officer ... visited him in the Jefferson County Jail, and served him with Board of Pardons and Paroles Notice of Parole Court Hearing, and informed Benion that he was charged with violation of condition number seven new offense unauthorized use of a mother vehicle. Violation of condition number seven again new offense of possession of marijuana first degree. And violation of condition number nine failure to pay supervision fees. Benion was currently in arrears of $70.00 [regarding his supervision fees]. Benion waived his right to call witnesses, and to an attorney." *Doc. No 13* at 3.

At the parole-court hearing, the hearing officer heard testimony from Benion's parole officer and from Benion himself regarding the parole violation charges detailed in the Report of Parole Violation. *Respondents' Exhibit 1 - Doc. No. 8-11* at 46. With respect to the possession of marijuana charge, the charge resulting in the revocation of parole, the testimony of Benion's parole officer consisted of her reading from the report

of parole violation which she conceded merely recited details obtained from the police report.  *Id*.  The hearing officer indicated Benion testified that on the date in question police officers "found marijuana in his car....  [Benion] stated that he saw the police go to his car ... [and that] the police ... came back with marijuana."  *Id*.  Benion takes umbrage with the hearing officer's characterization of his statements and argues that the hearing officer distorted the facts contained in his statements.  In his state petition for writ of certiorari, Benion advised he "understood that he had a right to not say anything, but chose to give a statement of his own free will in order to give the hearing court, a clear understanding of what actually happen[ed]."  *Respondents' Exhibit 1 - Doc. No. 8-11* at 9.  During the parole revocation hearing, Benion argues he explained that "police officers [were] walking through [his] neighborhood" when they approached him outside his residence, "ask[ed] for identification" and placed him in handcuffs.  *Id*.  The officers "then began walking around the yard [of his residence], and the car parked in the yard.  Moments later [an officer] held up what appeared to be a piece of a cigar" and the officer advised Benion the substance was marijuana.  *Id*.

Following this hearing, the hearing officer issued a written report detailing the evidence relied on and the reasons for recommending that Benion's parole be revoked.  *Respondents' Exhibit 1 - Doc. No. 8-11* at 45-50.  Benion received a copy of the parole court hearing report on August 27, 2009.  *Id*. at 50-51.  Based upon the hearing officer's

report and recommendation, the Board revoked Benion's parole.  *Id.* at 52.

Section 15-22-32, Ala. Code 1975, sets forth the procedures followed by the Alabama Board of Pardons and Paroles in revoking parole and provides for only one parole revocation hearing.[5]  Thus, the statue provides for a combined preliminary and final revocation hearing upon the Board's finding of reasonable cause to believe a parolee has violated the conditions of his parole.  The statute authorizes the Board to designate a hearing officer to hear evidence and determine whether a parolee is guilty of a parole violation and then recommend to the Board whether parole should be revoked.

Benion was arrested for possession of marijuana on June 17, 2009.  The following day, Benion gained his release on bond.  On August 17, 2009, an officer with the Birmingham Police Department stopped Benion for a traffic violation.  During this traffic stop, the officer determined a parole violation warrant existed necessitating Benion's arrest, and the officer arrested Benion on this warrant, a warrant issued due to the charges

---

[5]"Whenever there is reasonable cause to believe that a prisoner who has been paroled has violated his or her parole, the Board of Pardons and Paroles, at its next meeting, shall declare the prisoner to be delinquent, and time owed shall date from the delinquency.  The warden of each prison shall promptly notify the board of the return of a paroled prisoner charged with violation of his or her parole.  Thereupon, the board, a single member of the board, a parole revocation hearing officer, or a designated parole officer shall, as soon as practicable, hold a parole court at the prison or at another place as it may determine and consider the case of the parole violator, who shall be given an opportunity to appear personally or by counsel before the board or the parole court and produce witnesses and explain the charges made against him or her.  The board member, parole revocation hearing officer, or a designated parole officer, acting as a parole court, shall, within a reasonable time, conduct the parole revocation hearing to determine guilt or innocence of the charges and may recommend to the board revocation or reinstatement of parole.  Upon revocation of parole, the board may require the prisoner to serve out in prison the balance of the term for which he or she was originally sentenced, calculated from the date of delinquency or the part thereof as it may determine.  The delinquent parolee shall be deemed to have begun serving the balance of the time required on the date of his or her re-arrest as a delinquent parolee."

24

made the basis of the challenged revocation.  On August 19, 2009, officer Sullivan served Benion with notice of a parole revocation hearing and advised him of the underlying charges.  Benion acknowledged receipt of both the Notice of Parole Court Hearing and a copy of the Report of Parole Violation which contained detailed charges against him for alleged violations of the conditions of his parole.  *Petitioner's Exhibit C to the Petition for Writ of Certiorari/Respondents' Exhibit 1 - Doc. No. 8-11* at 16.  A parole revocation hearing was held on August 20, 2009 -- within three days of Benion's arrest on the parole violation warrant. At this hearing, the hearing officer advised Benion of his rights, determined his competency to proceed, provided an oath/affirmation to the witnesses, received testimony and permitted the presentation of documentary evidence.

Benion argues that he was not afforded the final revocation hearing contemplated by *Morrissey* but, instead, received only "a preliminary hearing" -- the hearing held before the hearing officer on August 20, 2009.  *Petition for Writ of Habeas Corpus Relief - Doc. No. 1* at 2.  Benion mistakenly characterizes the revocation hearing before the hearing officer as merely a preliminary hearing. However, the record establishes that this proceeding evinced every characteristic of a formal parole revocation hearing and, in actuality, constituted a unitary preliminary/full revocation hearing.  Specifically, the hearing officer conducted an evaluation of the contested facts and determined whether the facts warranted revocation.  In addition, prior to this hearing, Benion received written

25

notice of the alleged parole violations and the evidence obtained against him.  During the hearing, Benion was allowed  the opportunity to provide testimony, present witnesses and submit documentary evidence, and likewise afforded the right to confront and cross-examine the witness testifying against him. Upon conclusion of the hearing, the hearing officer provided a written statement of the evidence on which he relied in recommending that parole be revoked and the parole board issued a written order which set forth the reason for its decision to revoke parole.

Benion alleges that the hearing officer recommended revocation of parole based solely on hearsay evidence.  Specifically, he argues that the only adverse evidence adduced against him at the parole-court hearing was the parole officer's reading of the Report of Parole Violation which she conceded contained only details derived from the police report of Benion's arrest.  This claim, however, is refuted by the record.  Benion acknowledges that he provided statements under oath during the revocation hearing.  These statements, at the least, indicated that police officers found marijuana in his car on June 17, 2009.  The revocation of Benion's parole was therefore based on non-hearsay evidence which "reasonably demonstrate[d]" Benion had violated the condition of his parole requiring that he not violate any law.  *Mack*, 551 F.2d at 254.

Benion next asserts that because the possession of marijuana charge was dismissed, the hearing officer improperly used the facts underlying this charge as grounds for revoking

26

his parole.  The law is well settled that dismissal of the criminal charge underlying the revocation proceeding does not prevent the revocation of parole based on such charge. *Gholston v. Jones*, 848 F.2d 1156, 1160 (11th Cir. 1988) (fact that criminal charges underlying parole revocation have been or are ultimately dismissed does not invalidate revocation proceedings based on such charges); *Thompson v. Duke*, 882 F.2d 1180, 1187 (7th Cir. 1989) ("[D]ismissal of the charges underlying a parole violation warrant [is] of no consequence in the state's determination of a parole violation."); *Taylor v. United States Parole Commission*, 734 F.2d 1152, 1155 (6th Cir. 1984) (internal citations omitted) ("[T]he Parole Commission may find a parole violation based upon its own finding of new criminal conduct even if (1) the parolee is later acquitted of all charges arising from the same conduct, ... (2) all criminal charges arising from the same conduct are dismissed prior to trial, ... or (3) the parolee's criminal conviction is subsequently overturned.").  "A revocation proceeding is not a criminal trial, and no presumption of innocence exists as to a parolee.... [A]ll that is required is that the evidence and facts reasonably demonstrate that the person's conduct has not been as good as required by the terms and conditions of the release."  *Mack*, 551 F.2d at 254 (citations omitted).  Here, the revocation of Benion's parole was based on his admission that during a search of his car a police officer seized what the officer identified as marijuana.  Whether or not Benion was ultimately convicted

27

of this charge is of no consequence to the revocation determination.[6]

In light of the foregoing, the court concludes that the state courts did not decide Benion's due process claims "differently than [the Supreme] Court has [in a case based] on a set a of materially indistinguishable facts" nor did the state courts apply a rule that contradicts governing federal law. *Williams*, 362 U.S. at 412. Consequently, rejection of these claims by the trial and appellate courts was not contrary to actual Supreme Court decisions.

The Alabama Court of Criminal Appeals applied *Morrissey* in its review of Benion's claims challenging the process provided during the revocation proceedings and determined that "[t]he requirements set forth in *Morrissey* were clearly met. Benion was given notice of the alleged violation[s] and of the evidence against him; he was given notice of the hearing; he was given an opportunity to present his own witnesses and to confront and cross-examine witnesses who were present; the hearing was heard before a neutral and detached body; and he was given a written statement by the finder-of-fact that explained the evidence relied on and the basis for the revocation." *Respondents' Exhibit 2 - Doc. No. 8-1* at 3. This court must therefore resolve whether the Alabama Court of Criminal

---

[6]Under Alabama's statutory scheme, the hearing officer, whether a board member or other appropriate parole official, performs as the "neutral and detached" hearing body and factfinder contemplated by *Morrissey*. In his response filed on November 2, 1010, Benion makes conclusory and self-serving allegations that the hearing officer was not neutral and detached. *Doc. No. 13* at 7. Benion, however, presents no objective evidence to support this claim. In addition, the mere fact that the hearing officer served as a supervisor to Benion's parole officer or that he recommended revocation of parole does not demonstrate a lack of neutrality.

Appeal's decision to reject Benion's due process claims was an unreasonable application

of *Morrissey*.

> In determining whether the state court's decision is an
> unreasonable application of the law set out in [applicable]
> Supreme Court decisions, we need not decide whether we
> would have reached the same result as the state court if we had
> been deciding the issue in the first instance.  Instead, we decide
> only whether the state court's decision of the issue is
> objectively unreasonably.  *See Williams v. Taylor*, 529 U.S.
> 362, 411, 120 S.Ct. 1495, 1522, 146 L.Ed.2d 389 (2000)
> ("Under § 2254(d)(1)'s 'unreasonable application' clause,
> then, a federal habeas court may not issue the writ simply
> because that court concludes in its independent judgment that
> the relevant state-court decision applied clearly established
> federal law erroneously or incorrectly.  Rather, that application
> must also be unreasonable."); *Brown v. Head*, 272 F.3d 1308,
> [1313] (11th Cir. 2001)("It is the objective reasonableness, not
> the correctness *per se*, of the state court decision that we are to
> decide.").

*Wright v. Secretary for the Dept. of Corrections*, 278 F.3d 1245, 1256 (11th Cir. 2002).

Upon thorough review of the state court record, it is clear that the decision of the

Alabama Court of Criminal Appeals was objectively reasonable as parole officials fulfilled

all requisite procedural obligations during the revocation proceedings.  Specifically, the

evidentiary materials demonstrate that Benion received advance written notice regarding

the specific nature of his alleged violations and the evidence supporting the charges.  In

addition, the revocation hearing before the hearing officer satisfied the constitutional

requirements of due process as mandated by *Morrissey* and its progeny.  Thus, Benion is

not entitled to relief from this court and the instant petition for habeas corpus relief is due to be denied.

## IV.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.  The petition for writ of habeas corpus relief filed by Reginald A. Benion be DENIED.

2.  This case be DISMISSED with prejudice.

It is further

ORDERED that **on or before March 29, 2013**, the parties may file objections to the Recommendation.  Objections must specifically identify the findings in the Recommendation to which the party is objecting.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings in this Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); *see Stein v. Reynolds Securities, Inc*., 667 F.2d 33 (11th Cir. 1982); *Bonner v. City of Prichard*,

661 F.2d 1206 (11th Cir. 1981, *en banc*) (adopting as binding precedent all decisions of the

former Fifth Circuit handed down prior to September 30, 1981).

Done this 15th day of March, 2013.


_____/s/Charles S. Coody_____

CHARLES S. COODY

UNITED STATES MAGISTRATE JUDGE